**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DANIEL PEPOCK,                          )
                                        )
                                        )
        Plaintiff,                      )       NO. 2:22-cv-00981-CWW
                                        )
        v.                              )       PLAINTIFF'S AMENDED COMPLAINT
                                        )
ORGANICELL REGENERATIVE                 )       JURY TRIAL DEMANDED
MEDICINE, INC.,                         )
                                        )       Filed on behalf of:
                                        )       Plaintiff Daniel Pepock
        Defendant.                      )
                                        )       Counsel of Record:
                                        )       Lawrence D. Kerr, Esq.
                                        )       Pennsylvania ID #58635
                                        )       302 West Otterman Street
                                        )       Greensburg, PA 15601
                                        )       724-838-7600

## AMENDED COMPLAINT

AND NOW COMES plaintiff, Daniel Pepock, by and through his attorneys, Lawrence D. Kerr, Esq., and Tremba, Kinney, Greiner & Kerr LLC, and files the within amended complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B) in that no responsive pleading has been filed:

## I. INTRODUCTION

1.      This suit arises from plaintiff's employment by defendant.

2.      On June 6, 2022, plaintiff filed a one-count, lost-wage, breach of employment contract complaint in the Court of Common Pleas of Westmoreland County.  Exhibit A.  At that time plaintiff was still employed by defendant.

3.      On June 30, 2022, defendant fired plaintiff in retaliation for filing suit.

4.      On July 5, 2022, defendant removed plaintiff's state lawsuit to this Court based

on diversity of citizenship jurisdiction.  Plaintiff does not contest jurisdiction.

## II. JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 based on

diversity of citizenship.  The amount in controversy exceeds $75,000, exclusive of interest and

costs.  This Court also has federal question jurisdiction under 28 U.S.C. § 1331 in that Count II

pleads a claim under the Fair Labor Standards Act of 1938.  29 U.S.C § 1001 *et seq*.

6.      This Court has personal jurisdiction over defendant because its contacts with

Pennsylvania and this federal judicial district meet the requirements necessary to satisfy the

notions of fair play and justice established in *International Shoe Co. v. Washington*, 326 U.S.

310 (1945).

7.      Venue is properly set in this Court pursuant to 28 U.S.C. § 1391 because

plaintiff's causes of action arose from events which occurred in this judicial district, Pittsburgh

Division.

## III. PARTIES

8.      Plaintiff Daniel Pepock ("Mr. Pepock") is an adult individual who resides in

Greensburg, Westmoreland County, Pennsylvania.

9.      Defendant Organicell Regenerative Medicine, Inc. ("Organicell") is a Nevada

corporation with a headquarters office and address at 1951 Northwest 7th Avenue, Suite #300,

Miami, Florida 33136.

10.     Organicell's website at http://organicell.com/about states:

> Based in South Florida, Organicell™ is a publicly traded
> biotechnology company committed to the research, development,
> and manufacture of new biologic medicine, with a focus on current
> and potential regenerative therapeutics. Organicell™ is the leading,
> fully integrated Biologic Medicine Company.  Our mission is to
> transform regenerative medicine through the development of novel

nanotechnologies and to become the health care incubator for the
next generation of biologic medicines.

11.     On January 6, 2020, Organicell hired Mr. Pepock as one of its two Executive Vice

Presidents of Sales.  The other Vice President of Sales who was hired at the same time was Tracy

Yourke.

12.     Organicell, Mr. Pepock, and Ms. Yourke entered into a joint written employment

agreement, a copy of which is attached at Exhibit B.

13.     On October 15, 2021, Mr. Pepock's employment agreement was amended as

reflect by Exhibit C.

14.     Mr. Pepock worked remotely from his home in Greensburg and traveled as

needed.  Throughout his tenure he faithfully and diligently performed his job duties.

15.     Mr. Pepock's employment agreement stipulated that his compensation would

consist of, among other remuneration, a monthly salary of $18,000 and the opportunity to earn

sales commissions as follows:

> Each Executive shall be entitled to a 2.5% override on all revenues
> received from sales of the Company's products (excluding
> shipping and handling) for any quarterly period beginning with the
> quarterly period June 30, 2020, in excess of $600,000, provided
> however that each month during such quarterly period generated
> sales revenues in excess of $150,000.  The Company intends to
> evaluate the actual sales revenues for the quarterly period ended
> March 31, 2020, in connection with providing Executive a
> performance bonus for such period.

16.     On several occasions during 2021 and 2022, Organicell breached its contractual

duty to pay Mr. Pepock his full compensation.  He repeatedly asked Organicell to honor its

obligation.  His requests went unheeded, so he retained counsel.

17.     On May 5, 2022, Mr. Pepock's attorney mailed Organicell's Chief Financial

Officer (who had written his employment agreement) a letter which stated:

Our firm represents Daniel Pepock with regard to his unpaid wages and bonuses. Mr. Pepock has informed us and provided documentation that in August of 2021, wage payment of $18,000 was not paid, and is still outstanding. In addition, there are bonuses due as of March 31, 2022, in the amount of $105,386.00.

THIS LETTER WILL SERVE A FORMAL NOTICE OF OUR INTENT TO PURSUE PAYMENT AND REMEDIES PROVIDED UNDER PENNSYLVANIA'S WAGE PAYMENT AND COLLETION LAW.

The relevant Pennsylvania law, 43 P.S. § 260.9(a) provides for both civil remedies and penalties for failure to make payment in a timely fashion. Provisions of this section allow for attorney fees and could require the institution of a formal bond as security posted within thirty (30) days.

We would ask that payment as specified above be remitted to out client within ten (10) days of this letter. As prescribed under the Pennsylvania rules, a copy of this letter has been forwarded to Jennifer Berrier, Secretary of the Pennsylvania Department of Labor and Industry, at their offices at 651 Boas Street. Harrisburg, PA 17121

18.     Despite Mr. Pepock's attorney's letter and Mr. Pepock's repeated requests for full payment of his contractual compensation, and despite Organicell's promises that it would promptly do so, Organicell failed to pay him as required by his employment agreement and the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq*. ("WPCL"). Because Mr. Pepock's attorney's warning letter had no effect, his case was referred to the undersigned for litigation.

19.     On June 6, 2022, Mr. Pepock filed suit in Westmoreland County. The complaint was served on Organicell's CFO, who resided in and worked from California. Afterwards, the undersigned had several settlement discussions with Organicell's corporate counsel in Florida, but the matter was not resolved.

20.     Mr. Pepock continued to work for Organicell after he filed his state lawsuit on June 6, 2022.  Organicell's CFO and owner repeatedly assured him that he would be paid his full salary and commissions.  They praised his job performance and told him they looked forward to his continuing service to the company.  For example, on June 13, 2022, the owner told him, "You're family!  I love you!"  While giving him assurances that he would be fully paid, the owner and CFO urged him to drop his lawsuit.  He did not.  On June 30, 2022, they fired him. Exhibit D, Notice of Termination dated June 30, 2022.

21.     Mr. Pepock's termination letter stated that he was terminated "effective as of 11:59pm ET on June 30, 2022" for four instances of "good cause" as defined by his employment agreement.  The letter reminded him of his noncompetition restrictions and instructed him to return his company materials.  The letter concluded by stating that he would be paid "any salary and unreimbursed expenses…in due course," but "there are no further payment obligations," i.e., no commissions or severance benefits as provided by his employment agreement.  Five days later, Organicell removed Mr. Pepock's lawsuit to federal court.

22.     Despite Mr. Pepock's repeated requests for his unpaid compensation and Organicell's promises that he would be fully paid, Organicell has not done so, in violation of his employment agreement and the WPCL.

23.     After Mr. Pepock filed his state lawsuit and was subsequently fired because he would not drop it, Organicell paid him his outstanding salary of $30,000.  However, Organicell still owes him $135,000 in commissions, plus $120,000 for his severance benefit, plus liquidated damages (for untimely and unpaid compensation) and attorney fees under the WPCL.

24.     Regarding his severance benefit, Mr. Pepock's employment agreement distinguishes between a termination "for good cause" and "any reason other than for cause":

> In the event Executive is terminated for any reason other than for Cause, Executive will be entitled to receive the portion of unvested shares that would have vested in the subsequent 6-month period from the date of termination had the Executive not been terminated, in accordance with the vesting described above (excluding any accelerated provisions).

> In addition, Executive shall be entitled to receive a tail override payment equal to the total amount of the override earned by Executive for the immediately preceding quarter in each of the next subsequent 4 quarters following such termination, provide such termination is not for Cause or due to Executives (sic) termination without cause or either parties (sic) non-renewal of the Agreement.

25.     Mr. Pepock's employment agreement lists eleven potential grounds for termination of his employment based upon good cause.

26.     As stated, during Mr. Pepock's entire employment tenure, he was repeatedly praised for his job performance.  Even after he filed suit on June 6, 2022, Organicell assured him that his job performance continued to be outstanding, and the company wanted to retain him as its Vice President of Sales.

27.     However, when it became clear that Mr. Pepock would not drop his state lawsuit as requested by Organicell's owner and CFO, their opinion of his job performance did an abrupt about-face.  His June 30, 2022, termination letter accused him of violating the following provisions of his employment agreement relating to termination for good cause: paragraph 5 (willful and intentional failure to follow instructions); paragraph 6 (material breach or default of his agreement); paragraph 7(b) (bad faith to the detriment of the company); and paragraph 7(e) (failure to agree to annual and month revenue quota performance milestones).

28.     In fact, the only reason for Mr. Pepock's termination was the assertion of his rights under his employment agreement and the WPCL.  The ostensible grounds in his

termination letter are a sham.

29.     The value of Mr. Pepock's severance benefit is $120,000, not including liquidated

damages, attorney fees, interest, and costs.

**Count I –Plaintiff vs. Defendant,**
**Breach of Employment Agreement, including Violation of the**
**Pennsylvania Wage Payment and Collection Law**

30.     The previous paragraphs are incorporated.

31.     Mr. Pepock performed his duties in a competent, productive, and professional

manner.  He was very profitable.

32.     Mr. Pepock's salary, commissions, and severance benefit are "wages" under the

WPCL. 43 P.S. §260.2a.

33.     Organicell willfully breached Mr. Pepock's employment agreement by paying his

salary in an untimely manner in violation of the WPCL, and by failing to pay him his earned

commissions and severance benefit in violation of his employment agreement and the WPCL.

34.     Further, during the following time periods, Organicell paid Mr. Pepock, who was

an "employee" rather than an "independent contractor," by using IRS Form 1099s instead of IRS

Form W-2s, in violation of the federal statutes and regulations pertaining to the United States

Internal Revenue Code:

January 1-15, 2020;

January 16-31, 2020;

February 1-15, 2020;

February 16-28, 2020;

March 1-15, 2020;

March 16-31, 2020;

April 1-15, 2020;

April 16-30, 2020;

May 1-15, 2020;

May 16-30, 2020;

June 1-15, 2020;

June 16-30, 2020;

July 1-15, 2020;

July 16-31, 2020;

August 1-15, 2020;

August 16-30, 2020;

September 1-15, 2020;

September 16-30, 2020;

October 1-15, 2020;

October 16-31, 2020;

November 1-15, 2020;

November 16-30, 2020;

December 1-15, 2020;

December 16-31, 2020;

January 1-15, 2021;

January 16-31, 2021;

February 1-15, 2021;

February 16-28, 2021;

March 1-15, 2021;

March 16-31, 2021;

April 1-15, 2021;

April 16-30, 2021;

May 1-15, 2021;

May 16-30, 2021;

June 1-15, 2021;

June 16-30, 2021;

July 1-15, 2021;

July 16-31, 2021.

35.     In addition to violating IRS statutes and regulations, Organicell's practice of unlawfully paying Mr. Pepock as an independent contractor rather than as an employee caused him to incur actual monetary loss because that practice caused his federal and state income tax rates to be higher.  It also caused him to forfeit his employer-paid Social Security contributions, which will negatively impact his Social Security Indemnity benefits.

36.     Under the WPCL, Mr. Pepock is entitled to liquidated damages in an amount equal to twenty-five percent (25%) of his damages because his salary was paid in an untimely manner and his commissions and severance benefit are still unpaid. 43 P.S. §260.10.

37.     Under the WPCL, Mr. Pepock is entitled to attorney fees and expenses.  43 P.S. §260.9a(f).

WHEREFORE, Plaintiff Daniel Pepock requests judgment in the amount of his due compensation of $235,000, plus compensation for his increased tax rates and decreased Social Security contributions, plus liquidated damages, costs of litigation including reasonable attorney fees and witness fees, interest on the judgment, plus any other legal and equitable relief this Court deems proper.

**Count II – Plaintiff vs. Defendant**
**Fair Labor Standards Act Retaliatory Discharge**

38.     The previous paragraphs are incorporated.

39.     To establish a claim of retaliation under the Fair Labor Standards Act of 1938, 29

U.S.C.§ 201 *et seq*. ("FLSA"), a plaintiff must show (1) he engaged in a protected activity; (2)

his employer took an adverse employment action against him; and (3) there was a causal link

between his protected action and his employer's adverse action.

40.     To be covered by the FLSA, a plaintiff must be an employee and not an

independent contractor.  Mr. Pepock was an employee.

41.     The FLSA protects employees who have "filed" a "complaint" regarding the

employer's violation of the FLSA. The complaint may be made orally or in writing to either the

employer or to the government.

42.     On numerous occasions in 2021 and 2022, Mr. Pepock complained to

Organicell's owner and CFO that he was not being paid his full salary and commissions.

43.     On May 5, 2022, Mr. Pepock complained via his attorney's letter to the Secretary

of the Pennsylvania Department of Labor and Industry.

44.     On June 6, 2022, Mr. Pepock complained by filing suit in state court.

45.     Mr. Pepock's complaints preceded his termination on June 30, 2022.

46.     A FLSA complaint will be considered "filed" when it is made in such a way that a

reasonable, objective person would have understood the employee to have put his employer on

notice that he is asserting his statutory rights under the FLSA.  No magic words are required.

The employee must only convey to his employer his concern that his employer has engaged in a

practice made unlawful by the FLSA.  A complaint is sufficient if it is possible to discern from

the context of the employee's statement that he opposes an unlawful employment practice.  Mr.

Pepock's complaints met this requirement.

47.     The FLSA provides that employers may not require a non-exempt employee to work more than forty (40) hours per workweek unless the employee receives overtime compensation at a rate of not less than one-and-a-half times his regular pay.

48.     Certain classes of employees are exempted from the overtime requirement, including employees who work in a bona fide executive, administrative, or professional capacity. An employee is paid on a salary basis where he receives consistent compensation, the amount of which is not subject to reduction because of the quality or of the work performed.  29 C.F.R. § 541.602(a).  At first blush Mr. Pepock fits into this category.

49.     However, an employer who makes improper deductions from an exempted employee's salary loses the exemption if the facts demonstrate that his employer did not intend to pay him on a salary basis.  29 C.F.R. § 541.603(a).  Showing that an employer had an actual practice of making improper deductions to the employee's salary is sufficient. *Id*.

50.     Organicell had an actual practice of making improper deductions from Mr. Pepock's salary in that, contrary to his employment agreement which specifically required him to be paid $18,000 salary per month, he was paid zero salary for the following two-week pay periods:  August 1-15, 2021; August 16-30, 2021; April 16-30, 2022; May 1-15, 2022; May 16-31, 2022; June 1-15, 2022; June 16-30, 2022.

51.     Further proof of Organicell's actual practice of making improper deductions from its employees' salaries is that Ms. Lord was also not paid any salary during those same pay periods.

52.     As a result, Organicell forfeited its defense that Mr. Pepock was exempt under the FLSA's overtime pay requirement.

53.     During the time periods described in the preceding paragraphs, Mr. Pepock

worked more than forty (40) hours per week but was not paid overtime as required by the FLSA.

54.     The FLSA also provides that employees must be paid the statutory minimum

wage rate.

55.     Because Organicell paid Mr. Pepock zero salary for the following pay periods:

August 1-15,2021; August 16-30, 2021; April 16-30, 2022; May 1-15, 2022; May 16-31, 2022;

June 1-15, 2022; June 16-30, 2022, and because Organicell forfeited its right to construe him as

an FLSA exempt employee during those periods, he was paid less than the federal and state

minimum wage rates.

56.     A plaintiff may establish a casual link between his protected activity and an

adverse employment action by pointing to the temporal proximity between his protected activity

and the adverse employment action.

57.     The temporal proximity between Organicell's exhortations to Mr. Pepock to drop

his state lawsuit, his refusal to do so, and his precipitous termination indicate that the proximate

cause of his termination was Organicell's retaliation for the exercise of his protected rights under

the FLSA rather than the pretextual grounds espoused in his termination letter.

58.     Compensatory damages for emotional pain and suffering, and punitive damages

for evil behavior are recoverable for FLSA retaliation.  *Jones v. AmeriHealth Caritas*, 95 F.

Supp. 3d 807, 818-819 (E.D. Pa. 2015).

59.     As a result of Organicell's retaliatory discharge, Mr. Pepock suffered non-

economic damages such as emotional pain and suffering, loss of esteem, and loss of reputation.

60.     Organicell's retaliatory discharge was unlawful, intentional, willful, outrageous so

as to indicate an evil motive or reckless indifference to the rights of others, thus justifying an

award of punitive damage.

WHEREFORE, plaintiff Daniel Pepock requests judgement in the amount of lost wage compensation to be determined during discovery, back pay, front pay, liquidated damages, compensation for pain and suffering and other non-economic damages, punitive damage, costs of litigation including reasonable attorney fees and witness fees, interest on the judgement, plus any other legal and equitable relief this Court deems proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

TREMBA, KINNEY, GREINER & KERR, LLC

Date:  July 15, 2022

By: *Lawrence D. Kerr*
     Lawrence D. Kerr, Esq.
     PA I.D. #58635
     Attorney for Plaintiff
     302 West Otterman Street
     Greensburg, PA  15601
     Telephone: 724-838-7600
     Fax: 724-838-8870
     LKerr@westpalawyers.com